**PROCTOR et al.**

v.

**FRAME et al.**

Akron Municipal Court, Ohio.

No. 97 CVF 1938.

Decided Jan. 18, 1998.

*Ron Koehler,* for plaintiffs.

*David Lowry,* for defendant.

CARLA MOORE, Judge.

This civil action was tried to the court on October 1, 1997. Each party was represented by legal counsel. Plaintiffs sought compensatory and punitive damages from the landlord for constructive eviction and intentional disposal of personal property belonging to the tenants. On September 30, plaintiffs moved to dismiss without prejudice their complaint as against the Ohio Department of Human Resources. The trial proceeded as against defendant Dwight Frame.

The relevant facts involved in this dispute are as follows: On November 6, 1996, defendant showed plaintiffs rental property and secured from them a security deposit of $260, as well as a welfare voucher in the amount of $400. No utilities were operative in the unit at that time. Nonetheless, the Proctors moved in their belongings. When Mrs. Proctor attempted to have the utilities turned on, she was refused by the electric company because she did not have a copy of the lease for the apartment. For weeks, she and her family attempted in vain to contact defendant to obtain a copy, which he had promised would be given to them on the move-in date of November 7. During this time, the unit was uninhabitable. Mr. and Mrs. Proctor spent a couple of nights there on the weekend, but could not move their young children in because of the cold temperature. When the parties met on November 30, Frame refused to give a copy of the lease unless plaintiffs paid him rent for the month of December.

On December 2, defendant posted a three-day eviction notice. One day later, the locks on the unit were changed, preventing the plaintiffs from removing their belongings from the unit. Within the next several days, a few of their items were observed on the curb. There was some evidence of forced entry into the unit. No one saw the plaintiffs' items being removed from the premises. On December 4, defendant accepted $200 for a security deposit to rent the same premises to another individual.

This case presented conflicting testimony as to numerous facts. The court had the opportunity to observe the witnesses and to consider their demeanor in assessing credibility. Mrs. Proctor presented herself as a straightforward, credible witness. Her youth and inexperience limited her in some aspects of her

testimony, but on key issues, such as the signing of the lease, and the defendant's refusal to provide a copy of the lease, she was quite credible.

Mr. Proctor, on the other hand, was much less credible. Having been previously deposed, his testimony differed dramatically on several issues, such as whether he received the keys to the apartment on the day he signed the lease or the next day; whether he and his wife were separated or living together at the time immediately prior to their moving into the apartment; and whether the door to their apartment was damaged immediately after they received the three-day notice. As a result, Mr. Proctor's testimony was given little weight.

Mr. Frame, however, was even less credible than Mr. Proctor. His courtroom demeanor and his evasive and implausible answers to questions stretched credibility to the breaking point. His testimony is accorded only a modicum of weight.

The court finds from the evidence that the parties did enter into a binding legal contract on November 6 for rental of the premises in question. Defendant failed to give to plaintiffs, at any time, the original or a copy of the lease agreement with the information required by R.C. 5321.18. As a result, the plaintiffs were precluded from having any utilities turned on in their unit. Even though their personal effects had been moved into the apartment, they could not use any appliances or even move their children into the apartment. The court finds the reasonable rental value of the apartment to be zero.

The plaintiffs accuse defendant of taking or otherwise disposing of their belongings. Plaintiffs were unable to produce any evidence that the defendant actually disposed of their property. It is clear that he had access to and control of the rental unit in that he admitted changing the locks to the doors immediately after the November 30th meeting when the Proctors announced their intention to move out. There were no eyewitnesses, however, to defendant's having placed any of plaintiffs' items on the curb or to his otherwise disposing of the personal property. Assuming plaintiffs were able to prove defendant had disposed of their property, the evidence presented as to damages was woefully inadequate to meet the burden of proof required by law. Mrs. Proctor struggled to come up with values of most of the items listed as having been lost, and at one point on cross-examination, conceded that she was "pulling numbers from the air."

There is little question, however, that defendant's actions in failing to provide plaintiffs with the lease was knowing and intentional. This is supported by the fact that he asked for December's rent as a precondition to providing plaintiffs with that to which they had a legal right. R.C. 5301.11; *Glyco v. Schultz* (1972), 35 Ohio Misc. 25, 62 O.O.2d 459, 289 N.E.2d 919. The court finds from the evidence that defendant knew or should have known that plaintiffs would be unable to inhabit the premises without a copy of the lease. Unquestion-

**14**

ably, he had actual knowledge of this fact on November 30. His failure to provide plaintiffs with a copy of the lease was violative of Ohio law and constituted constructive eviction from the premises. R.C. 5321.04(A)(4); *Nye v. Schuler* (1959), 110 Ohio App. 443, 13 O.O.2d 208, 165 N.E.2d 16; *Keener v. Ewert* (1979), 67 Ohio App.2d 17, 21 O.O.3d 336, 425 N.E.2d 914.

Further, the defendant acted in bad faith in changing the locks on the doors prior to the expiration of the three-day notice he posted. Credible testimony was given that defendant posted the three-day notice and that the next day changed the locks on the door, preventing the plaintiffs from obtaining their belongings. The court finds this action on the part of the defendant to have been willful and malicious. The practices by the defendant of accepting rent monies and then making himself unavailable to tenants by giving fictitious or nonworking phone numbers was as questionable as his implying the corporate status of the so-called company "Services Inc.," which he conceded at trial is not a corporation. Accordingly, plaintiffs are entitled to compensatory damages in the amount of $460 and punitive damages in the amount of $5,000, plus court costs.

It is so ordered.

*Judgment accordingly.*